**UNITED STATES DISTRICT COURT FOR THE**
**Western District of New York**

| | | |
|---|---|---|
| | ) | |
| **IN THE MATTER OF THE EXTRADITION** | ) | **Misc. No.  16MJ5084** |
| **OF ALI MOSHIR** | ) | |
| _____ | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF EXTRADITION

On June 29, 2016, the United States filed an initial complaint for the extradition of ALI

MOSHIR ("Moshir"), at the request of the Government of Canada, pursuant to the Treaty on

Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27

U.S.T. 983**,** which entered into force on March 22, 1976 (TIAS 8237) (the "1971 Treaty"); the

Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. Treaty Doc.

No. 101-17 (1990), which entered into force on November 26, 1991 (the "1988 Protocol"); and

the Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S.

Treaty Doc. No. 101-11 (2002), which entered into force on April 30, 2003 (the 2001 Protocol")

(collectively, "the treaty").  In this matter, the United States acts on behalf of the Canadian

government in accordance with U.S. treaty obligations.

Canada has submitted a formal request for Moshir's arrest, extradition, and surrender,

supported by appropriate documents, to the United States Department of State.  By statute, this

Court must hold a hearing to consider the evidence of criminality presented by Canada and to

determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty

or convention."  18 U.S.C. § 3184.  If the Court finds the evidence sufficient, it must "certify the

same" to the Secretary of State, who then decides whether to surrender the fugitive "according to the treaty." *Id.*[1]

As summarized in the complaint, Moshir is wanted by Canada for trial on charges of two counts of criminal harassment in violation of Section 264, Subsection (2), clauses (a) and (b) of the Criminal Code of Canada; two counts of break and enter in violation of Section 348, Subsection (1), clause (a) of the same code; one count of unlawfully in dwelling house in violation of Section 349, Subsection (1) of the same code; and one count of arson with disregard to human life in violation of Section 433, clause (a) of the same code.

An arrest warrant was issued for Moshir on January 29, 2016 for two counts of criminal harassment, two counts of break and enter, and one count of unlawfully in dwelling house. These charges stem from Moshir's repeated attempts to contact Joy Walker ("the victim"). Moshir had met the victim approximately sixteen years ago when he rented her basement apartment in Ontario, and they later had a three-month-long romantic relationship. Sometime after the relationship ended, Moshir moved to the United States. Initially, Moshir and the victim kept in contact, but eventually the victim stopped answering Moshir's calls and asked him to stop contacting her. However, he persisted. In January 2015, after the victim refused to lend Moshir money, his communications—emails, telephone calls to her home, office, and cellphone, and voice messages—became more increasingly aggressive and caused the victim to feel harassed and fear for her safety. Many of the communications contained threatening content including death threats. On January 27, 2016, Moshir showed up in Ontario and began following the

---

[1] After the Court has completed its "limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender." *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993). "The Secretary exercises broad discretion and may properly consider myriad factors affecting both the individual defendant as well as foreign relations, which the extradition magistrate may not." *Id.*

victim as she walked home from work after getting off a bus.  The victim became afraid and yelled at him to leave her alone and threatened to call the police.  Eventually, when two women passing by asked if she was okay, Moshir ran away.  When the victim arrived home, she discovered that her front door was closed but not locked.  After she entered the house, the victim noticed that the glass patio door at the back of her residence had been smashed in, and she saw Moshir standing in her living room.  She fled her residence and called the police.

A second set of charges was laid on April 4, 2016, relating to allegations of arson, and those charges were subsequently replaced by an Information on April 27, 2016 and an arrest warrant was issued on the same day.  It is alleged that on April 3, 2016, Moshir broke into the victim's house and deliberately set it on fire.  When firefighters arrived at the victim's house, they observed what appeared to be drops of blood near the front door and going down the path at the front of the house.  A gas can was found inside.  When police arrived, they followed the trail of blood to a gas station located behind victim's residence.  Video footage of the day of the fire showed Moshir entering the Shell gas station at 8:59 p.m., prior to the fire at victim's house. While at the gas station, Moshir asked to borrow fifty cents to use the payphone.  After returning, Moshir asked to borrow the gas station attendant's cordless phone, and the attendant agreed. Moshir left the gas station and returned a short time later.  At that time, Moshir appeared to have blood coming from his hand.  Police observed that it was the victim's cell phone number that was the last number dialed on the attendant's phone.

Police also obtained video surveillance from another gas station, Petro-Canada, which is directly across from the victim's residence.  This video shows Moshir purchasing a jerry can and filling it with gasoline.  The video shows Moshir attempting to pay for the gasoline and can with U.S. dollars, but the attendant would not accept U.S. dollars.  Moshir returned twenty minutes

3

later with Canadian money and used the Canadian money to pay for the can and gasoline.  The attendant advised police that Moshir also wanted to purchase a lighter and matches but the attendant declined to sell it to him.

One of the victim's neighbors saw a man fitting Moshir's description standing in front of the victim's residence at 8:15 a.m. the day before.  This neighbor noticed the man paying special attention to the victim's residence.  Upon leaving, the man went to the Petro-Canada gas station.  Another neighbor saw an unknown male standing in front of the victim's house and observed that unknown male go to a nearby gas station.  The descriptions by the two neighbors matched Moshir's appearance and attire as captured by video footage from the two gas stations.  A day after the fire, the victim received an email that she believes was from Ali Moshir that referred to "this house that we lost" and stated "I love you.  And you're still my lady."

Because an extradition hearing is not a criminal or civil proceeding, but is *sui generis*, the government offers this memorandum setting out the legal principles that govern the hearing to be held pursuant to 18 U.S.C. § 3184.  While extradition law is an area of law unto itself, the Supreme Court has expounded on many of the questions over the years and has settled a number of those principles.

## II.     THE ROLE OF THE EXTRADITION JUDGE IS LIMITED

Extradition is primarily an executive responsibility with a specially defined role for a judicial officer, who is authorized by statute to determine whether to certify to the Secretary of State that the submitted evidence is "sufficient to sustain the charge."  18 U.S.C. § 3184.  The Secretary of State, and not the court, makes the decision regarding whether the fugitive should be surrendered to the requesting country.  18 U.S.C. §§ 3184, 3186; *Martin v. Warden*, *Atlanta Penitentiary*, 993 F.2d 824, 828 (11th Cir. 1993); *Lo Duca v. United States*, 93 F.3d 1100, 1110

4

n.10 (2d Cir. 1996).  The Executive Branch remains primarily responsible for extradition, while the extradition judge is assigned the limited duty of determining the sufficiency of the request under the applicable treaty provisions.  *Martin*, 993 F.2d at 828-29.  That judicial function is carried out by conducting the hearing pursuant to Section 3184 of Title 18 of the United States Code.

At the hearing, the court should consider the evidence presented on behalf of the requesting country and determine whether the legal requirements for certification, as defined in the treaty, statutes, and case law, have been established.  If any explanatory evidence is offered by the fugitive, the court should rule on its admissibility.  Once the evidentiary record is complete, the court should make written findings of fact and conclusions of law as to each of the elements for certification, including separate findings for each offense as to which extradition is sought.  *Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir. 1973), *cert. dismissed*, 414 U.S. 884 (1973).  If the court certifies the evidence to the Secretary of State, the court must commit the fugitive to the custody of the United States Marshal to await the further determination by the Secretary regarding surrender to the representatives of the requesting state.  The court provides its certification to the Secretary of State together with a copy of the evidence and a transcript of any testimony presented at the hearing.  18 U.S.C. § 3184; *see Ordinola v. Hackman*, 478 F.3d 588, 597 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 373 (2007).  The decision of whether to surrender the fugitive to the requesting country rests with the Executive Branch, and specifically with the Secretary of State.

In fulfilling its function under Section 3184, the judicial officer should liberally construe the applicable extradition treaty in order to effect its purpose, namely, the surrender of fugitives to the requesting country.  *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 14 (1936);

*Factor v. Laubenheimer*, 290 U.S. 276, 301 (1933).  In discussing the application of this rule, the District Court for the Southern District of Florida in *McElvy v. Civiletti* wrote:

> [A] narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intentions of the parties to secure equality and reciprocity between them.

523 F. Supp. 42, 47 (S.D. Fla. 1981) (citations omitted).  In order to carry out a treaty obligation, the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure."  *Factor*, 290 U.S. at 298.  This country does not expect foreign governments to be versed in our criminal laws and procedures.  *Grin v. Shine*, 187 U.S. 181, 184 (1902).  Thus, "[f]orm is not to be insisted upon beyond the requirements of safety and justice."  *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925), *cited in Yapp v. Reno*, 26 F.3d 1562, 1565 (11th Cir. 1994).

Statements by the United States Department of State as to interpretation of treaties should be given great weight by the court.  *El Al Israel Airlines*, *Ltd. V. Tseng*, 525 U.S. 155, 168 (1999); *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 184-85 (1982) ("Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight.").

## II.    THE REQUIREMENTS FOR CERTIFICATION ARE WELL-SETTLED

An extradition certification is in order where:  (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the applicable treaty; and (5) there is sufficient evidence to support a finding of

probable cause as to each charge for which extradition is sought.  *Fernandez*, 268 U.S. at 312, *cited in Yapp*, 26 F.3d at 1565; *Hill v. United States*, 737 F.2d 950, 951 n.1 (11th Cir. 1984).

### A.  Authority of the Court Over the Proceedings

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State."  Consequently, both magistrate judges and district judges may render a "certification" under Section 3184.  *See Austin v. Healey*, 5 F.3d 598, 601-02 (2d Cir. 1993) (magistrate had authorization to conduct the extradition hearing without specific delegation of authority), *cert. denied*, 510 U.S. 1165 (1994); *Ward v. Rutherford*, 921 F.2d 286, 287 (D.C. Cir. 1990) (both statute and local rule made plain magistrate's authority to conduct extradition hearing); *Jimenez v. Aristeguieta*, 311 F.2d 547, 553-55 (5th Cir. 1962) (any judicial officer in class authorized by statute may conduct extradition hearing), *cert. denied*, 373 U.S. 914 (1963).

### B.  Jurisdiction Over the Fugitive

It is well settled that the Court has jurisdiction over a fugitive found within its jurisdictional boundaries.  18 U.S.C. § 3184 (a judge "may, upon complaint made under oath, charging any person found within his jurisdiction, . . . issue his warrant for the apprehension of the person so charged"); *see Pettit v. Walshe*, 194 U.S. 205, 219 (1904); *Grin*, 187 U.S. 181; *In re Pazienza*, 619 F. Supp. 611 (S.D.N.Y. 1985).  This Court may exercise jurisdiction over Moshir because he was arrested within the jurisdiction of the Western District of New York.

### C.  Treaty in Full Force and Effect

The extradition statute, 18 U.S.C. § 3184, provides for extradition in instances in which a treaty or convention is in force between the requesting state and the United States.  *See, e.g., In*

*re Chan Kam-Shu*, 477 F.2d 333 (5th Cir. 1973), *cert. denied*, 414 U.S. 847 (1973). In this case, the government has provided a declaration from Katherine C. Fennell, an attorney in the Office of the Legal Adviser for the Department of State, attesting that there is a treaty in full force and effect between the United States and Canada. Again, the Department of State's determination is entitled to deference from the Court. *Terlinden v. Ames*, 184 U.S. 270, 288 (1902); *Kastnerova v. United States*, 365 F.3d 980, 985-87 (11th Cir. 2004), *cert. denied*, 541 U.S. 1090 (2004); *United States ex rel. Saroop v. Garcia*, 109 F.3d 165, 171 (3d Cir. 1997); *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996).

### D.  Crimes Covered by the Treaty

Extradition treaties create an obligation for the United States to surrender fugitives under the circumstances defined in the treaty. Article 2 of the 1971 Treaty, as replaced by Article 1 of the 1988 Protocol, applicable in this case provides for the return of fugitives charged with or convicted of an "extraditable offense" as that term is defined under the treaty. The documents submitted by the requesting state establish that the fugitive has been charged in Canada with the crimes of engaging of two counts of criminal harassment in violation of Section 264(2)(a) and (b) of the Criminal Code of Canada, two counts of break and enter in violation of Section 348(1)(a) of the same code, one count of unlawfully in dwelling house in violation of Section 349(1) of the same code, and one count of arson with disregard to human life, in violation of section 433(a) of the same code.

Article 2 of the 1971 Treaty, as replaced by Article 1 of the 1988 Protocol, applicable here defines offenses as extraditable if the criminal conduct is punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment notwithstanding that conduct such as interstate transportation or use of

the mails or of other facilities affecting interstate or foreign commerce required for the purpose of establishing jurisdiction, forms part of the offense in the United States or that it relates to taxation or revenue or is one of a purely fiscal character.  Consequently, the Court should examine the description of criminal conduct provided by Canada in support of its charge and decide whether that conduct would have been criminal under U.S. law, if committed in this country.  A requesting country is not obliged to produce evidence on all elements of a criminal offense nor to establish that its crimes are identical to ours.  *Kelly v. Griffin*, 241 U.S. 6, 15 (1916).

The Supreme Court noted in *Collins v. Loisel*, 259 U.S. 309 (1922), that dual criminality is not a technical concept involving a comparison of elements of the two countries' offenses:

> The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries.  It is enough if the *particular act* charged is criminal in both jurisdictions.

259 U.S. at 312 (emphasis added); *accord Gallo-Chamorro v. United States*, 233 F.3d 1298, 1307 (11th Cir. 2000), *cert. denied*, 516 U.S. 811 (1995); *United States v. Saccoccia*, 58 F.3d 754, 766 (1st Cir. 1995), *cert. denied*, 517 U.S. 1105 (1996).

Dual criminality is established if the conduct involved in the foreign offense would be criminal under either U.S. federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states.  *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107-08 (9th Cir. 1981).  The Court should "approach challenges to extradition with a view toward finding the offense within the treaty," *McElvy*, 523 F. Supp. at 48, "because extradition treaties should be interpreted with a view to fulfil our just obligations to other powers."  *Grin*, 187 U.S. at 184. Foreign governments should not be expected to be versed in our criminal laws and procedures.

9

*Id.* at 184-85.  Moshir's criminal activity in Canada, had it occurred in the United States, would be subject to prosecution under 18 U.S.C. § 2261A (Stalking), New York Penal Law § 140.25-2 (Burglary in the Second Degree), and 18 U.S.C. § 81 (Arson) and/or New York Penal Law §150.05 (Arson in the Fourth Degree).

The dual criminality inquiry turns on whether Moshir's conduct would be criminal in the United States—which it undoubtedly would—not on a technical comparison of U.S. and Canadian statutes.  Indeed, courts have not required perfect parity between the U.S. and foreign offenses in order to find dual criminality present.  *See, e.g.*, *United States ex rel. Rauch v. Stockinger*, 269 F.2d 681, 686–87 (2d Cir. 1959) (analyzing Canadian extradition request under prior treaty, noting that it was "immaterial" that the "acts in question constitute the crime of theft and fraud in Canada and the crime of larceny in New York State"); *In re Extradition of Batchelder*, 494 F. Supp. 2d 1302, 1307 (N.D. Fla. 2007) (finding dual criminality on two Canadian offenses—abduction and unlawful confinement—even though it identified only one U.S. federal counterpart offense, kidnapping).

### E.  Probable Cause That the Fugitive Has Committed the Offenses

The standard of proof to find the evidence "sufficient to sustain the charge . . ." pursuant to Section 3184 is the familiar domestic requirement of probable cause.  The Court must conclude there is probable cause to believe that the crime charged by Canada was committed and that the person before the Court committed it.  *Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006); *Sindona v. Grant*, 619 F.2d 167 (2d Cir. 1980).  The evidence is sufficient, and probable cause is established, if a person of ordinary prudence and caution can conscientiously entertain a reasonable belief in the probable guilt of the accused.  *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975).  The Supreme Court stated in *Benson v. McMahon* that:

> the proceeding before the commissioner is not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him, but rather of the character of those preliminary examinations which take place every day in this country before an examining or committing magistrate for the purpose of determining whether a case is made out which will justify the holding of the accused, either by imprisonment or under bail, to ultimately answer to an indictment, or other proceeding, in which he shall be finally tried upon the charge made against him.

127 U.S. 457, 463 (1888); *see also Fernandez*, 268 U.S. at 312 ("Competent evidence to establish reasonable grounds is not necessarily competent evidence to convict."); *Collins*, 259 U.S. at 316 ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."); *accord Afanasjev v. Hurlburt*, 418 F.3d 1159, 1165 n.11 (11th Cir. 2005), *cert. denied*, 546 U.S. 993 (2005); *Barapind v. Enomoto*, 400 F.3d 744, 752 (9th Cir. 2005); *Sidali v. I.N.S.*, 107 F.3d 191, 199 (3d Cir. 1997), *cert. denied*, 522 U.S. 1089 (1998).   The evidence offered by Canada, described above, clearly establishes probable cause to conclude that Moshir committed the offenses for which his extradition has been requested.

## III. EXTRADITION IS *SUI GENERIS* AND FOLLOWS UNIQUE PROCEDURES

### A.      An Extradition Hearing Is Not a Criminal Proceeding

The extradition hearing prescribed by 18 U.S.C. § 3184 is unique in nature.  *See, e.g.*, *Martin*, 993 F.2d at 828; *Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2d Cir. 1976) (extradition is *sui generis*), *cert. denied*, 429 U.S. 833 (1976).  As described in *Jhirad*, an extradition hearing is *sui generis*, meaning its own type of case, with its structure and process defined by statute and treaty.  536 F.2d at 482.  An extradition hearing is not a criminal proceeding; its purpose is to decide the sufficiency of the charge under the treaty, not guilt or innocence.  *Neely v. Henkel*,

180 U.S. 109, 123 (1901); *Benson*, 127 U.S. at 463; *Afanasjev*, 418 F.3d at 1165 n.11.   The limited nature of the hearing has resulted in special procedural and evidentiary rules that apply. For example, the person whose extradition is sought is not entitled to the rights available in a criminal trial.   *Neely*, 180 U.S. at 122 (rights available to one charged with criminal offense in this country not applicable to offenses committed outside the United States against the laws of another country); *accord Charlton v. Kelly*, 229 U.S. 447, 461 (1913); *Martin*, 993 F.2d at 829. The purpose of an extradition hearing under Section 3184 is not to try the underlying charge; that is for the foreign court.   *Neely*, 180 U.S. at 123.

The Federal Rules of Criminal Procedure do not apply to extradition proceedings.   Rule 1(a)(5) states:   "These rules are not applicable to extradition and rendition of fugitives."   The Federal Rules of Evidence are also inapplicable.   Rule 1101(d)(3) provides:   "The rules (other than with respect to privileges) do not apply . . . [to p]roceedings for extradition or rendition." *See Afanasjev*, 418 F.3d at 1164-65; *Melia v. United States*, 667 F.2d 300 (2d Cir. 1981); *Greci v. Birknes*, 527 F.2d 956 (1st Cir. 1976).[1]   Moreover, the fugitive has no right to discovery, *Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005), *cert. denied*, 546 U.S. 1171 (2006); *Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir.1991); *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984); he has no right to cross-examine witnesses who might testify at the hearing, *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1407 (9th Cir. 1988), *cert. denied*, 490 U.S. 1106 (1989); *Messina*, 728 F.2d at 80; his right to present evidence is severely limited, *Messina*, 728 F.2d at 80[a]; there is no Sixth Amendment right to a speedy trial, *Yapp*, 26 F.3d at 1565; *Martin*, 993 F.2d at 829; *Sabatier v. Dabrowski*, 586 F.2d 866, 869 (1st Cir. 1978); the Fifth Amendment guarantee against double jeopardy does not apply to successive extradition proceedings, *Collins*, 262 U.S. at 429; *Matter of Extradition of McMullen*, 989 F.2d 603, 612-13 (2d Cir. 1993), *cert.*

*denied*, 510 U.S. 913 (1993); the exclusionary rule is not applicable, *Romeo v. Roache*, 820 F.2d 540, 545 (1st Cir. 1987); *Simmons v. Braun*, 627 F.2d 635, 636-37 (2d Cir. 1980); and the defendant does not have the right to confront his accusers, *Bingham v. Bradley*, 241 U.S. 511, 517 (1916).

### B.     Extradition Hearings Rely on Written Submissions and Do Not Require Live Witnesses

A certification of extradition may be, and typically is, based entirely on the authenticated documentary evidence and information provided by the requesting government.  *See, e.g.*, *Bovio v. United States*, 989 F.2d 255, 259-61 (7th Cir. 1993) (Swedish investigator's statement sufficient to establish probable cause); *Eain v. Wilkes*, 641 F.2d 504, 509-11 (7th Cir. 1981), *cert. denied*, 454 U.S. 894 (1981) (sworn statement of cooperator, corroborated by police officer affidavit and affidavit of second civilian witness sufficient); *O'Brien v. Rozman*, 554 F.2d 780, 783 (6th Cir. 1977); *Shapiro*, 478 F.2d at 902-03; *Matter of Extradition of Mainero*, 990 F. Supp. 1208, 1212-13 (S.D. Cal. 1997) (statements of co-conspirators and other witnesses sufficient in extradition to Mexico); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1433-34 (S.D. Fla. 1993) (documents and statements sufficient for extradition to Honduras), *aff'd*, 28 F.3d 116 (11th Cir. 1994); *In re Edmonson*, 352 F. Supp. 22, 24 (D. Minn. 1972).  The finding may also be based upon written statements by the foreign prosecutor or judge summarizing the evidence.  *Rice v. Ames*, 180 U.S. 371, 375-76 (1901); *accord Glucksman v. Henkel*, 221 U.S. 508, 513-14 (1911).

The federal statute and the applicable treaty govern both the nature of and the admissibility of the evidence at an extradition hearing.  The treaty applicable in this case lists at Articles 9 and 10 the required submissions by the Government of Canada.  Article 10(2) of the treaty further provides that "documentary evidence in support of a request for extradition or

copies of these documents shall be admitted in evidence . . . "when, in the case of a request emanating from Canada and they are authenticated by an officer of the Department of Justice and are certified by the principal diplomatic or consular officer of the United States in Canada." Section 3190 provides that "properly and legally authenticated" documentary evidence including "depositions, warrants, or other papers or copies thereof *shall be admitted.*"  *See* 18 U.S.C. § 3190 (emphasis added).[2]  *See Afanasjev*, 418 F.3d at 1164; *see also Collins*, 259 U.S. at 313. Proof that the authentication is proper and legal exists if the documents are accompanied by the certificate of an appropriate U.S. diplomatic or consular officer in the requesting country attesting that the documents would be admissible for similar purposes in that country.  18 U.S.C. § 3190.  The documents filed in this case are accompanied by a certification of Elizabeth Moore Aubin from the U.S. Embassy in Canada attesting to the authenticity of the supporting documents.

Extradition treaties do not require or even anticipate the testimony of live witnesses[3] at the hearing because to do so "would defeat the whole object of the treaty." *Yordi v. Nolte*, 215 U.S. 227, 231 (1909); *see also Bingham*, 241 U.S. at 517; *Afanasjev*, 418 F.3d at 1163-65; *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986); *Shapiro*, 478 F.2d at 902.  Hearsay evidence is admissible at extradition hearings and fully supports the court's findings leading to a certification under Section 3184.  *Collins*, 259 U.S. at 317; *Afanasjev*, 418 F.3d at 1165.  In

---

[2] "Depositions, warrants or other papers or copies thereof offered in evidence upon a hearing of any extradition case shall be received and admitted as evidence on such hearing for all purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required."  18 U.S.C. § 3190.

[3] No U.S. extradition treaty, even those most recently negotiated, specifically addresses live witnesses.  The 1971 Treaty, the 1988 Protocol, and the 2001 Protocol refer only to the submission of documents.

*Bingham*, the Supreme Court rejected the fugitive's claim that *ex parte* witness affidavits submitted in support of his extradition to Canada should not be considered because he had not had the opportunity to cross-examine those witnesses.  241 U.S. at 517.  The Court referred to the applicable treaty language, which obligated the United States to extradite "upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial, if the crime or offense had there been committed."   *Id.*  As 18 U.S.C. § 3190 does today, its predecessor, applicable in *Bingham*, provided for the admissibility at the extradition hearing of depositions, warrants, and similar documents upon proper certification by the U.S. diplomatic or consular officer.  The Court in *Bingham* stated:

> It is one of the objects of § 5170 [today, § 3190] to obviate the necessity of confronting the accused with the witnesses against him; and a construction of this section, or of the treaty, that would require the demanding government to send its citizens to another country to institute legal proceedings, would defeat the whole object of the treaty.

> *Id.*  That principle of extradition law is as firmly-rooted today as it was in 1916 when the Supreme Court decided *Bingham*.[4]  *See Zanazanian v. United States*, 729 F.2d 624, 626-627 (9th Cir. 1984) (applying *Bingham* to extradition to Sweden); *Shapiro*, 478 F.2d at 902 (obviating necessity of confronting accused with witnesses against him is "one of the prime objects of bi-lateral extradition agreements"), *cert. dismissed*, 414 U.S. 884 (1973); *Surrender of Ntakirutimana*, 988 F. Supp. 1038, 1042 (S.D. Tex. 1997), *aff'd*, 184 F.3d 419 (5th Cir. 1999), *cert. denied*, 528 U.S. 1135 (2000).  Even the advent of modern transportation and communication has not changed this firmly-rooted posture of the U.S. courts.  *See Shapiro*, 478 F.2d at 902.

### C.    The Fugitive's Evidence Is Very Limited, As in a Preliminary Hearing

Due to the nature and limited purpose of an extradition hearing under Section 3184 and the importance of the international obligations of the United States under an extradition treaty, a

---

[4] The principle dates back well into the 19th century.  In *In re Heilborn*, the district court ordered extradition based upon a presentation of documentary and other hearsay evidence.  11 F. Cas 1025, 1029 (S.D.N.Y. 1854).

fugitive's opportunity to challenge the evidence introduced against him is very circumscribed.  A fugitive may not introduce evidence that contradicts the evidence submitted on behalf of the requesting country, but may introduce evidence explaining the submitted evidence.  "Generally, evidence that explains away or completely obliterates probable cause is the only evidence admissible at an extradition hearing, whereas evidence that merely controverts the existence of probable cause, or raises a defense, is not admissible."  *Barapind*, 400 F.3d at 749 (*en banc*) (quoting *Mainero v. Gregg*, 164 F.3d 1199, 1207, n.7 (9th Cir. 1999)); *see also Ordinola v. Hackman*, 478 F.3d 588, 608-09 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 373 (2007); *Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006).

The Supreme Court in *Collins v. Loisel* quoted with approval a district court's reasoning as to why the scope of an extradition hearing is very limited:

> If this were recognized as the legal right of the accused in extradition proceedings, it would give him the option of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter.  The result would be that the foreign government though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here.  This would be in plain contravention of the intent and meaning of the extradition treaties.

*Collins*, 259 U.S. 309 at 316 (quoting *In re Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883)); *accord Charlton*, 229 U.S. at 461.

The extent to which the fugitive may offer explanatory proof is largely within the discretion of the committing judge.  *Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991); *Hooker v. Klein*, 573 F.2d 1360, 1369 (9th Cir.), *cert. denied*, 439 U.S. 932 (1978); *United States*

*ex rel Petrushansky v. Marasco*, 325 F.2d 562, 567 (2d Cir. 1963), *cert. denied*, 376 U.S. 952 (1964) (and cases cited therein).  The category of explanatory evidence is not large in light of the limited purpose of the hearing, *i.e.*, to determine the sufficiency of the evidence to sustain the charge, and the overarching goal of the proceeding, which is to effectuate the purposes of the treaty.  The extradition hearing excludes evidence that requires the court to make determinations outside of the scope of the hearing or within the province of the ultimate trier of fact, particularly when those determinations rest on foreign law.   Such evidence exceeds the limits of "explanatory" or "obliterating" evidence and is not properly before the court.  *In re Solis*, 402 F. Supp. 2d 1128, 1132 (C.D. Cal. 2005).

In applying the prohibition on considering "contradictory evidence" and the allowance of "explanatory evidence" several courts including courts in this district have followed the explanation of these concepts elucidated by the court in the *Matter of Sindona:*

> The distinction between "contradictory evidence" and "explanatory evidence" is difficult to articulate.  However, the purpose behind the rule is reasonably clear.  In admitting "explanatory evidence," the intention is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and having some reasonable chance of negating a showing of probable cause.  The scope of this evidence is restricted to what is appropriate to an extradition hearing.  The decisions are emphatic that the extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits.

450 F. Supp. 672, 685 (S.D. N.Y. 1978), *aff'd*, 619 F.2d 167 (2d Cir. 1980).

> **D.      The Extradition Hearing Excludes Technical and Affirmative Defenses**

A court should reject defenses against extradition that "savor of technicality," as they are inappropriate in dealings with a foreign nation.  For example, a variance between the charges pending in the foreign state and the complaint filed on behalf of that state in our federal courts is

not a defense to surrender.  *Glucksman*, 221 U.S. at 513-14; *accord Bingham*, 241 U.S. at 517; *Gengler*, 507 F.2d at 927-1024; *Shapiro*, 478 F.2d at 904.

It is well settled that affirmative defenses to the merits of the charge are not to be entertained in extradition hearings.  *Charlton*, 229 U.S. at 462; *Collins*, 259 U.S. at 316-17; *Hooker*, 573 F.2d at 1368; *DeSilva v. DiLeonardi*, 125 F.3d 1110, 1112 (7th Cir. 1997), *cert. denied*, 525 U.S. 810 (1998).  A fugitive may not introduce evidence that (1) merely conflicts with the evidence submitted on behalf of the demanding state, *Collins*, 259 U.S. at 315-17; (2) attempts to establish an alibi, *Shapiro*, 478 F.2d at 901; (3) suggests an insanity defense, *Charlton*, 229 U.S. at 462; or (4) seeks to impeach the credibility of the requesting country's witnesses, *Bovio*, 989 F.2d at 259.  These issues, which require factual and credibility determinations, are for the court in the requesting country to resolve at a trial of the charges.

### E.   The Executive Considers Matters Other Than Sufficiency; Rule of Non-Inquiry

Other than the sufficiency of the evidence, all matters that may be raised by the fugitive as defenses to extradition are to be considered by the Secretary of State, not by the court.  *See* 18 U.S.C. §§ 3184, 3186.  In making extradition determinations, "[t]he Secretary exercises broad discretion and may properly consider factors affecting both the individual defendant as well as foreign relations—factors that may be beyond the scope of the magistrate judge's review." *Sidali*, 107 F.3d at 195 n.7.  The Secretary takes into account humanitarian claims and applicable statutes, treaties, or policies regarding appropriate treatment in the receiving country.  *See Ntakirutimana v. Reno*, 184 F.3d 419, 430 (5th Cir. 1999), *cert. denied*, 528 U.S. 1135 (2000). This is consistent with the long-held understanding that surrender of a fugitive to a foreign

government is "purely a national act . . . performed through the Secretary of State," within the Executive's "powers to conduct foreign affairs." *See In re Kaine*, 55 U.S. 103, 110 (1852).

Therefore, under this constitutionally-based rule of judicial non-inquiry, a fugitive's contention that the extradition request is politically motivated or that the justice system of the requesting state is unfair should be addressed by the Secretary of State. It is not the role of the court to look behind the extradition request to the motives of the requesting country. *Ordinola v. Hackman*, 478 F.3d 588, 604 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 373 (2007) ("the motives of the requesting government are irrelevant to our decision" and "must be addressed to the Secretary of State"); *Eain*, 641 F.2d at 513 (sole discretion of the Secretary of State to determine whether foreign country's request for extradition is a subterfuge), *cert. denied*, 454 U.S. 894 (1981). Likewise, the court should not investigate the fairness of the requesting country's criminal justice system. *United States v. Lui Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997) ("It is not that questions about what awaits the relator in the requesting country are irrelevant to extradition; it is that there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed"); *see also Prasoprat*, 421 F.3d at 1016; *Blaxland v. Commonwealth Director*, 323 F.3d 1198, 1208 (9th Cir. 2003).

Similarly, the Secretary of State has sole discretion under 18 U.S.C. § 3186 and the relevant treaty to determine whether a request for extradition should be denied on humanitarian grounds because of procedures or treatment awaiting the surrendered fugitive. *See Quinn v. Robinson*, 783 F.2d 776, 790-91 (9th Cir. 1986), *cert. denied*, 479 U.S. 882 (1986); *Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2d Cir. 1990) ("[T]he degree of risk to [the accused's] life from extradition is an issue that properly falls within the *exclusive purview* of the executive branch.")

19

(emphasis in original).  Respect for and confidence in the Executive's exercise of discretion is well placed, as stated in *Ahmad*:

> the district court proceeded to take testimony from both expert and fact witnesses and received extensive reports, affidavits, and other documentation concerning Israel's law enforcement procedures and its treatment of prisoners. This, we think, was improper.  The interests of international comity are ill-served by requiring a foreign nation . . . to satisfy a United States district judge concerning the fairness of its laws and the manner in which they are enforced.  It is the function of the Secretary of State to determine whether extradition should be denied on humanitarian grounds.  So far as we know, the Secretary never has directed extradition in the face of proof that the extraditee would be subjected to procedures or punishment antipathetic to a federal court's sense of decency.  Indeed, it is difficult to conceive of a situation in which a Secretary of State would do so.

910 F.2d at 1067; *accord Martin*, 993 F.2d at 830 ("humanitarian considerations are matters properly reviewed by the Department of State").

Further, a fugitive's contention that he or she will be tried in the extraditing country for crimes other than those for which extradition will be granted must be rejected as baseless or, if not baseless, as beyond the responsibility of the court, for the U.S. government does not presume that the requesting government will seek a trial in violation of a treaty.  *Bingham*, 241 U.S. at 514.  As the district court noted in *Gallina v. Fraser*, "the Secretary of State of the United States would not authorize the surrender of a fugitive . . . to be punished for non-extraditable crimes, and . . . any extradition would be so conditioned as to negate this possibility."  177 F. Supp. 857, 867 (D. Conn. 1959), *aff'd*, 278 F.2d 77 (2d Cir. 1960).

## IV.     CONCLUSION

WHEREFORE, the United States requests that the Court conduct a hearing, pursuant to Title 18, United States Code, Section 3184, to determine that the submission on behalf of Canada is sufficient to sustain each of the charges under the provisions of the applicable treaty and to

certify the extradition of the fugitive for each of those charges to the Secretary of State for possible surrender to Canada.

WILLIAM J. HOCHUL, JR.
United States Attorney


/s/  MARIE P. GRISANTI
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202
(716)843-5818
Marie.Grisanti@usdoj.gov